IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| DAWUD BASHAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 124-112 |
| | ) | |
| CHRISTOPHER RABUN, Deputy, | ) | |
| Richmond County Sheriff's Office, and | ) | |
| KENNETH E. ATTERTON, Investigator, | ) | |
| Richmond County Sheriff's Office, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, currently detained at Columbia County Detention Center, in Appling, Georgia, is proceeding *pro se* and *in forma pauperis* ("IFP") in this civil rights case filed pursuant to 42 U.SC. § 1983 concerning events alleged to have occurred at the hands of deputies with the Richmond County Sheriff's Department. Defendants move for summary judgment. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 42), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

## I. PROCEDURAL BACKGROUND

The Court screened Plaintiff's second amended complaint, (doc. no. 15), and found Plaintiff had arguably stated a viable excessive force claim against Defendant Atterton, as well as a failure to intervene claim against Defendant Rabun, (doc. no. 16). The Court also found Plaintiff had arguably stated a viable claim against both Defendants for deliberate indifference to a serious

medical need. (Doc. no. 16.) The Court further recommended dismissal of all official capacity claims for monetary damages. (Doc. no. 17.) United States District Judge J. Randal Hall adopted the recommendation as the opinion of the Court on January 21, 2025. (Doc. no. 20.) Both Defendants answered the second amended complaint on February 21, 2025, and the Clerk of Court issued a Scheduling Notice setting deadlines for the case. (Doc. nos. 24, 25.) The case proceeded through the discovery period, during which Defendants took Plaintiff's deposition. (Doc. no. 43-2, "Pl.'s Dep.")

Consistent with the case deadlines, Defendants filed a motion for summary judgment on September 10, 2025. (Doc. no. 42.) At that time, the Clerk of Court issued a notice concerning the summary judgment motion and the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of failing to comply with the requirements for responding. (See doc. no. 46.) Plaintiff requested and received an extension of time to respond, and on October 9, 2025, the Court again explained the rights and requirements associated with responding to Defendants' motion. (Doc. no. 54, pp. 4-6.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied.[1]

On October 30, 2025, Plaintiff filed his opposition to the summary judgment motion, which included a Response, Memorandum of Law in Support of the response, and a Declaration which was neither notarized nor attested to as true under penalty of perjury. (See doc. nos. 58-60.) In his response to the motion for summary judgment, Plaintiff concedes he has no claim

[1]The Court also explained summary judgment motions, along with the rights and requirements associated with responding, in its December 19, 2024 Order screening Plaintiff's second amended complaint. (Doc. no. 16, p. 6.)

against Defendant Atterton and states his claims against this Defendant are "being voluntarily dismissed by the Plaintiff due to misfiling the correct name of Defendant which Plaintiff did not know until discovery."[2] (Doc. no. 59, pp. 1-2.) Accordingly, as discussed in detail below, all claims against Defendant Atterton should be dismissed as a matter of law, and the Court focuses the remainder of its analysis on the merits of the remaining claims of failure to intervene and medical deliberate indifference brought against Defendant Rabun.

In accordance with Local Rule 56.1, Defendants submitted a Statement of Undisputed Material Facts ("SMF") in support of their summary judgment motion. (Doc. no. 44.) Plaintiff's opposition papers do not respond to each fact in the SMF and often contain unsworn and/or conclusory allegations, many of which are inadmissible evidence for purposes of opposing Defendants' motion for summary judgment. See Howard v. Memnon, 572 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*) (explaining "[u]nsupported, conclusory allegations" . . . insufficient to withstand a motion for summary judgment); Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (requiring consideration of only admissible evidence when ruling on motions for summary judgment); see also Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment."). Thus, the Court deems admitted all portions of Defendants' SMF having evidentiary support in, and not otherwise contradicted by, the record and which are not properly opposed by Plaintiff as contemplated under Federal Rule of Civil

---

[2]Prior to Defendants filing their motion for summary judgment, Plaintiff also conceded in a July 21, 2025 filing that Defendant Atterton "is not the officer who assaulted me." (Doc. no. 37, p. 1.)

Procedure 56.[3] See Loc. R. 56.1; Fed. R. Civ. P. 56(c)(1)(A) & (e); see also Williams v. Slack, 438 F. App'x 848, 849-50 (11th Cir. 2011) (*per curiam*) (finding no error in deeming defendants' material facts admitted where *pro se* prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections); Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (same).

Moreover, although Plaintiff submitted a Declaration in support of his opposition, it was not notarized and does not contain the permissible alternate language from 28 U.S.C. § 1746 that Plaintiff "declare(s) under penalty of perjury" that the information in the affidavit is "true and correct." Rather Plaintiff simply states that he "declares the following is both true and correct." (Doc. no. 58, Decl., p. 1.) An affidavit or declaration used to oppose a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Even if the Declaration had been submitted under penalty of perjury, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of mater fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984); see also Bryant v. U.S. Steel Corp., 428 F. App'x 895, 896 (11th Cir. 2011) (*per curiam*) (affirming district court's disregard of affidavit submitted to avoid summary judgment that "squarely contradicted unequivocal testimony [the plaintiff] gave on

[3]A party disputing a fact must cite "to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as require by Rule 56(c), the court may . . . consider the facts undisputed when considering the motion [and] grant summary judgment if the motion and supporting materials . . . show the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

deposition"). Thus, in his Declaration or other opposition papers, Plaintiff may not contradict his sworn deposition testimony, described in more detail below, to avoid entry of summary judgment in favor of Defendants.

Notably, however, any such deficiencies do not result in an automatic grant of summary judgment to Defendants. Instead, the movants continue to "shoulder the initial burden of production in demonstrating the absence of any genuine issue of material fact." Reese v. Herbert, 527 F.3d 1253, 1268 (11th Cir. 2008); see also Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (explaining movant is not absolved of burden to show entitled to judgment as a matter of law, even if non-moving party fails to comply with Federal or Local Rules for opposing summary judgment motion). Thus, the Court has reviewed the entire record, including a copy of the body camera footage taken by Defendant Rabun of his arrival on Russell Street on April 13, 2023, his interaction with Plaintiff on Russell Street, and his return to his patrol car to leave after completing his duties with respect to Plaintiff. (Doc. no. 43-1, "Rabun Decl." & Ex. 2 thereto, "Video"), Plaintiff's sworn deposition testimony (Pl.'s Dep.), and any factually supported opposition to the SMF "to determine if there is, indeed, no genuine issue of material fact." Mann, 588 F.3d at 1303; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Pourmoghani-Esfahani v. Gee, 625 F.3d 1313, 1315 (11th Cir. 2010) (*per curiam*) (explaining where party's version of facts obviously contradicts video, court accepts video depiction).

## II. FACTUAL BACKGROUND

### A. 2004 Ford F150 Truck Reported Stolen

On April 9, 2023, Larry Gaines reported his 2004 Ford F150 truck had been stolen from the Bon Air Apartments on Walton Way in Augusta, Georgia. (SMF ¶¶ 1, 2; Rabun Decl.

¶¶ 3-4.) Defendant Rabun, a deputy sheriff employed by the Sheriff of Richmond County, reported to the scene on Walton Way and created a case report regarding the stolen F150. (SMF ¶ 3; Rabun Decl. ¶¶ 2, 5 & Ex. 1 thereto.) At 6:51 a.m., on April 13, 2023, Defendant Rabun responded to a separate call regarding a suspicious vehicle at Carnes Place in Augusta, less than half a mile from the Walton Way scene where the F150 was reported stolen. (SMF ¶¶ 4, 5; Rabun Decl. ¶¶ 6, 7.) Defendant Atterton was also called to the Carnes Place scene to investigate a suspicious vehicle but did not see Plaintiff there. (Doc. no. 43-3, "Atterton Decl." ¶¶ 4, 5.)

**B. Plaintiff's First Encounter with Plaintiff on April 13, 2023**

Upon his arrival at Carnes Street, Defendant Rabun found Plaintiff and Tiesha Mitchell in the stolen F150.[4] (SMF ¶¶ 6, 7; Rabun Decl. ¶¶ 8, 9.) Plaintiff was with Mitchell because he "was just getting in the Fentanyl business and she knew people. You're going to be dealing with the drug, you going to need her with you all the time." (Pl.'s Dep. 39.[5]) While Mitchell exited the truck and interacted with Defendant Rabun, Plaintiff exited the truck and fled on foot, returning to the Bon Air apartments to change clothes. (SMF ¶¶ 8, 9; Rabun Decl. ¶ 10; Pl.'s Dep. 19-20, 40.)

Defendant Rabun detained Mitchell, put her in the back of his patrol car, and over the course of approximately an hour and a half, dealt with Mitchell's repeated claims of having swallowed drugs and being on the verge of having a seizure – claims that resulted in multiple calls

[4]Tiesha Mitchell had been using fake names, including Alexis Hill and Miranda Norman. (SMF ¶ 7; Pl.'s Dep. 35.)

[5]For clarity, the Court hereinafter cites to the page numbers assigned by CM/ECF, the Court's docketing system, at the top of each page.

to emergency services personal and eventual transport to Augusta University Medical Center ("AUMC"). (SMF ¶ 10; Rabun Decl. ¶¶ 11-14.) Plaintiff knew Mitchell had faked seizures numerous times when she encountered law enforcement in an effort to avoid arrest. (SMF ¶ 11; Pl.'s Dep. 38-40.)

### C. Plaintiff's Second Encounter with Plaintiff on April 13, 2023

At 9:19 a.m., law enforcement found Plaintiff on Russell Street, approximately half a mile from Carnes Place, and a tall black male officer with "Martin" on his uniform had taken Plaintiff into custody and placed Plaintiff in the back of his patrol car. (SMF ¶¶ 13-14; Rabun Decl. ¶¶ 15-17; Pl.'s Dep. 44-45.) Plaintiff originally stated Defendant Atterton had arrested him on Russell Street because the only two names he had seen in the discovery packet from his underlying criminal case were Rabun and Atterton, but upon seeing the video from Defendant Rabun's body worn camera produced in this civil case, Plaintiff saw only an officer named Martin, "a tall black dude, slim built," arresting him. (Pl.'s Dep. 43-45; Rabun Decl., Video thereto.)

Defendant Atterton was not present for Plaintiff's arrest on Russell Street and did not see Plaintiff or place his hands on Plaintiff at any time on April 13, 2023. (Atterton Decl. ¶ 6.) After Officer Martin placed Plaintiff in the back of the patrol car, Plaintiff falsely told him he had swallowed "something," in an effort to get Officer Martin to call emergency services "so [he] can work the move that I seen Mitchell" do previously when she avoided arrest by faking a medical emergency.[6] (Pl.'s Dep. 45-46; SMF ¶ 17.) Plaintiff did not specifically say he had swallowed drugs, just "something," and insisted Officer Martin call emergency services; Officer Martin did

[6]Officer Martin has not been named as a Defendant or definitively identified. However, for ease of reference, throughout the remainder of this Report and Recommendation and based on the acknowledgment of all parties that an officer with the name "Martin" on his uniform took Plaintiff into custody on Russell Street, the Court will refer to this individual as Officer Martin.

not believe Plaintiff's lie, pulled Plaintiff out of the back seat, and ran a skinny rod down Plaintiff's throat in an effort to get him to throw up. (Pl.'s Dep. 48, 50-51; SMF ¶¶ 16, 17.)

Plaintiff did not see Defendant Rabun or know what he was doing when Officer Martin allegedly ran the skinny rod down Plaintiff's throat, deposing that he did not see Defendant Rabun – only his patrol car on the opposite side of the street – when the rod was used, and confirming he was not at Officer Martin's patrol car. (SMF ¶¶ 18-20; Pl.'s Dep. 48-50.) Defendant Rabun's only interaction with Plaintiff on Russell Street was a brief conversation while Plaintiff was in the back of the patrol car, as depicted on the video of Defendant Rabun traveling to Russell Street, exiting his patrol car, speaking with Plaintiff in the back of Officer Martin's patrol car, and returning to his patrol car to leave after completing his duties with respect to Plaintiff. (Rabun Decl. ¶¶ 16-18 & Video thereto.)

Defendant Rabun did not witness any officer insert a rod down Plaintiff's throat or otherwise use any force on Plaintiff. (Rabun Decl. ¶ 19; SMF ¶¶ 43, 44.) Nor did Defendant Rabun see any physical injury to Plaintiff and did not see, or know about, any law enforcement officer causing an injury to Plaintiff. (Rabun Decl. ¶ 25.) Officer Martin put Plaintiff back in the patrol car and took him to jail, but a nurse refused to accept Plaintiff and said he had to go to the hospital. (Pl.'s Dep. 51-52.) Defendant Rabun's case report states that upon arrival at the jail, Plaintiff told jail staff he had swallowed an unknown amount of drugs and exhibited signs of a seizure, resulting in his transport to AUMC for treatment. (Rabun Decl., Ex. 3 thereto.) Plaintiff saw Defendant Rabun at the hospital, but both Defendant Rabun and Officer Martin immediately left the hospital after Plaintiff was turned over to medical personnel. (Pl.'s Dep. 24, 53-54, 57.)

Non-verfied medical records from AUMC show Plaintiff presented for seizure activity in the back of a Richmond County Sheriff's Office car and reported an officer shoved a rod like

device down his throat after he reported swallowing a bag of an unknown substance. (Pl.'s Dep. Ex. 2, doc. no. 42-2, p. 76.) Despite Plaintiff deposing there was blood everywhere in the back of Officer Martin's patrol car when he took Plaintiff to the jail and then AUMC, (Pl.'s Dep. 52), the medical records show that a CT scan performed on Plaintiff's neck "showed moderate amount of emphysema within retropharyngeal space tracking from the nasopharynx into the chest as described without definitive injury identified." (Doc. no. 42-2, p. 76.) The diagnostic impression found "[n]o acute fracture or trauma-related malalignment involving the thoracic segments," (id. at 79), and no evidence of esophageal perforation, (id. at 81). Moreover, an examination of the oral cavity at AUMC revealed "normal tongue, no evident trauma"; Plaintiff's palate was intact and a normal uvula was noted. (Id. at 76.) Plaintiff was in "no acute distress," and there was "no obvious signs of injury to neck." (Id. at 77.)

Plaintiff refused to allow medical personnel to complete a laryngoscopy or perform a GI endoscopy, (id. at 76, 79), despite the explanation that the surgical interventions were recommended "due to risks involved with pneumomediastinum and aerodigestive perforation including but not limited to esophageal necrosis, empyema, mediastinitis, septic shock, and death," (id. at 79). (See also Pl.'s Dep. 65-66.) There was no diagnosis of such injuries, only a documentation of such potential problems if the diagnostic procedures were not performed to check for injuries of the type reported by Plaintiff. (Doc. no. 43-2, pp. 79-80.) Even though Plaintiff deposed he "needed surgery immediately," (Pl.'s Dep. 65), he did not let medical personnel complete the laryngoscopy or do any other procedure and walked out of the hospital the next morning, (id. at 28-30, 66.) Plaintiff testified at his deposition that his mouth and throat injuries basically healed on their own, "naturally," without any further treatment at the hospital or from jail medical personnel. (Id. at 30, 66-67.)

**D. Defendant Atterton Completes Investigation of the Stolen Truck**

Defendant Rabun turned over his information about Plaintiff, Mitchell, and the stolen F150 to Defendant Atterton, a white male employed as an Investigator with the Richmond County Sheriff's Office at the time of the events at issue, who then took over the investigation. (SMF ¶¶ 32, 33; Rabun Decl. ¶ 23 & Ex. 3 thereto; Atterton Decl. ¶¶ 2, 3.) Defendant Atterton obtained Criminal Arrest Warrants against Plaintiff and Mitchell, and the Grand Jury indicted both, for the offense of theft by taking. (SMF ¶¶ 34, 35; Atterton Decl. ¶ 10 & Exs. 2-5 thereto; doc. no. 43-4, Ex. D, Indictment.) Plaintiff eventually pleaded guilty to the lesser included offense of theft by receiving stolen property and was sentenced to five years of probation. (SMF ¶ 36; doc. no. 43-5, Final Disposition and Change of Plea documentation.) Defendant Atterton did not take Plaintiff into custody on April 13, 2023, or transport him to jail or AUMC. (SMF ¶ 41; Atterton Decl. ¶¶ 6, 8.)

**III. DISCUSSION**

**A. Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has

the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

### B. Defendant Atterton Is Entitled to Summary Judgment on All Claims Against Him

Summary judgment should be granted to Defendant Atterton on the use of excessive force and medical deliberate indifference claims because Plaintiff's claims against this Defendant have no basis in fact. Although Plaintiff alleged in his second amended complaint Defendant Atterton arrested him on April 13, 2023, rammed a metal rod down Plaintiff's throat several times because he was upset Plaintiff had claimed to have swallowed drugs and needed medical attention, and then took Plaintiff to the jail rather than obtain medical help for the

heavy bleeding from Plaintiff's mouth (doc. no. 16, p. 5), Plaintiff changed his story at his deposition. Plaintiff conceded the only reason he named Defendant Atterton as a defendant was because he had seen his name in the discovery packet from his underlying criminal case, but upon seeing the video produced in discovery for this civil case, Plaintiff saw only Officer Martin, "a tall black dude, slim built," arresting him. (Pl.'s Dep., pp. 43-45; Rabun Decl., Video.)

Defendant Atterton is a white male who obtained Criminal Arrest Warrants against Plaintiff and Mitchell but did not take Plaintiff into custody on April 13, 2023, or transport him to jail or AUMC. (SMF ¶¶ 34, 39, 41; Atterton Decl. ¶¶ 3, 6, 8.) On July 21, 2025, Plaintiff stated Defendant Atterton "is not the officer who assaulted me." (Doc. no. 37, p. 1.) Moreover, in Plaintiff's response to the summary judgment motion, he concedes he has no claim against Defendant Atterton and states his claims against this Defendant are "being voluntarily dismissed by the Plaintiff due to misfiling the correct name of Defendant which Plaintiff did not know until discovery." (Doc. no. 59, pp. 1-2.) Thus, all of Plaintiff's claims against Defendant Atterton fail and should be dismissed as a matter of law.

**C. Defendant Rabun Is Entitled to Summary Judgment on the Failure to Intervene Claim**

Defendant Rabun is entitled to summary judgment on the failure to intervene claim because Plaintiff's version of events is implausible and contrary to the official record. First, as described above, Plaintiff concedes Defendant Atterton did not arrest him, let alone use excessive force on him. Eleventh Circuit precedent has long established that "an officer who is present at the scene and who fails to reasonable steps to protect the victim of another officer's use of excessive force, can be liable for his nonfeasance." See, e.g., Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007) (*per curiam*) (quotation marks and citations

omitted); see also Helm v. Rainbow City, 989 F.3d 1265, 1272 (11th Cir. 2021) ("The principle that an officer must intervene when he or she witnesses unconstitutional force has been clearly established in this Circuit for decades." (citation omitted).) However, for liability to attach in the context of failing to intervene, there must be "an act of excessive force by the perpetrating officer in the first instance." Ireland v. Prummell, 53 F.4th 1274, 1301 (11th Cir. 2022); Crenshaw v. Lister, 556 F.3d 1283, 1294 (11th Cir. 2009) (*per curiam*) (finding no duty to intervene in absence of excessive force in first instance). As Defendant Atterton did not use excessive force, and indeed did not see Plaintiff on April 13, 2023, Defendant Rabun cannot be held liable for failing to intervene in any action between Plaintiff and Defendant Atterton.

Second, even if Plaintiff had properly named the arresting officer as a Defendant, summary judgment in favor of Defendant Rabun would still be appropriate. In particular, Plaintiff has presented no evidence from which a reasonable jury could find Defendant Rabun could have anticipated and then stopped the arresting officer from placing the rod in Plaintiff's mouth. While an officer present on the scene who fails to take reasonable steps to protect a victim from another officer's use of excessive force may be held liable, "it must also be true that the non-intervening officer was in a position to intervene yet failed to do so." Hadley v. Gutierrez, 526 F.3d 1324, 1330-31 (11th Cir. 2008) (citing Priester v. City of Rivera Beach, 208 F.3d 919, 924 (11th Cir. 2000)). Here, Plaintiff testified at his deposition he did not see Defendant Rabun or know what he was doing when Officer Martin allegedly ran the rod down Plaintiff's throat. (Pl.'s Dep. 48-49.) Instead, Plaintiff could state only that Defendant Rabun's patrol car was on the other side of the street and Defendant Rabun was in, or near the corner of, his patrol car. (Id.) Moreover, Defendant Rabun's body worn camera that captured footage from the point when he arrived at Russell Street, exited his patrol car, completed his duties,

and then returned to his patrol car does not show any use of force by any law enforcement officer on Plaintiff. (Rabun Decl., Video). Thus, Plaintiff cannot show that Defendant Rabun was in a position to intervene, either because he was on the opposite side of the street or not on the scene when the force was allegedly used, and Defendant Rabun is entitled to summary judgment on the failure to intervene claim.

### D. Defendant Rabun Is Entitled to Summary Judgment on the Deliberate Indifference Claim

To the extent Plaintiff originally alleged Defendant Rabun was deliberately indifferent to his serious medical needs because Defendant Rabun witnessed an episode of use of excessive force by Defendant Atterton and failed to obtain immediate medical care for the resultant alleged bloody injury, as discussed in detail above, Plaintiff now concedes Defendant Atterton was not the arresting officer whom Plaintiff now claims used excessive force on him. Plaintiff has disavowed all claims against Defendant Atterton. Thus, Defendant Rabun could neither have failed to call an ambulance after Defendant Atterton injured Plaintiff, nor provided false information to medical personnel at AUMC about the "true" cause of Plaintiff's injury at the hands of Defendant Atterton.

Moreover, even if Plaintiff had properly named the arresting officer as a Defendant, summary judgment in favor of Defendant Rabun would still be appropriate because he is entitled to the protection of qualified immunity. "Qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Myrick v. Fulton Cnty., 69 F.4th 1277, 1300 (11th Cir. 2023) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982)). "The officer bears the initial burden to prove that he acted within his discretionary authority." Dukes v. Deaton, 852

F.3d 1035, 1041 (11th Cir. 2017). If the officer makes this initial showing, "the burden shifts to the plaintiff to show (1) that the governmental official violated a constitutional right and, if so, (2) that the constitutional right was clearly established at the time of the wrongdoing." Helm, 989 F.3d at 1272 (citations omitted). The Court may decide these two issues in any order, but Plaintiff must satisfy both showings if he is to survive a qualified immunity defense. See Hinson v. Bias, 927 F.3d 1103, 1116 (11th Cir. 2019). Qualified immunity protects from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation omitted).

Here, as Defendant Rabun's actions were taken as an on-duty law enforcement officer conducting investigative functions, he has demonstrated he was acting withing the scope of his discretionary authority. See id.; see also Rabun Decl. ¶ 26. Indeed, Plaintiff has not contested Defendant Rabun was acting within the scope of his discretionary authority, and the burden now shifts to Plaintiff to show qualified immunity is inappropriate. See Hinson, 927 F.3d at 1116. Thus, the Court turns its attention to the elements of a claim of deliberate indifference to a serious medical need. See id.

**1. Medical Deliberate Indifference Framework**

To prevail on a claim for deliberate indifference to a serious medical need, Plaintiff must prove that: (1) he had a serious medical need –the objective component, (2) a defendant acted with deliberate indifference to that need – the subjective component, and (3) his injury was caused by a defendant's wrongful conduct.[7] Goebert v. Lee Cnty., 510 F.3d 1312, 1326

[7]Because Plaintiff was not a convicted prisoner at the time of the events alleged in the amended complaint, his claims are technically covered by the Fourteenth Amendment, but the standards applied under the Eighth and Fourteenth Amendments are identical. See Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

(11th Cir. 2007); see also Thomas v. Bryant, 614 F.3d 1288, 1317 n.29 (11th Cir. 2010) (explaining that in addition to objective and subjective components of Eighth Amendment claim, a plaintiff must "show a causal connection between the constitutional violation and his injuries" to prevail on any § 1983 claim). In particular, the plaintiff must first demonstrate he suffered a "objectively, sufficiently serious" deprivation. Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To satisfy the objective component regarding a serious medical need, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).

After this initial threshold question, the plaintiff must also demonstrate a defendant acted with "subjective recklessness as used in the criminal law" by showing a defendant was "actually, subjectively aware his own conduct caused a substantial risk of serious harm to the plaintiff," but even if he knew of that substantial risk, he is not liable under the Eighth Amendment "if he responded reasonably to the risk." Wade, 106 F.4th at 1262 (citing Farmer, 511 U.S. at 839, 844-45). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). In addition, a plaintiff alleging liability for deliberate indifference based on a delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188, *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002); see also Farrow v. West, 320 F.3d 1235, 1244 n.12 ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153

L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

**2. Plaintiff's Claim Against Defendant Rabun Fails Because No Reasonable Juror Could Find He Acted with Subjective Recklessness or Caused Plaintiff Any Injury**

Defendant Rabun avers he did not see any physical injury to Plaintiff and did not see, or know about, any law enforcement officer causing an injury to Plaintiff. (Rabun Decl. ¶ 25.) However, Plaintiff testified at his deposition that after Officer Martin put the rod down his throat, he was bleeding "everywhere" in the back of the patrol car, jail officials refused to accept him because of the injury, and he was put on a stretcher when he got to the hospital because he "was losing so much blood." (Pl.'s Dep. 52-53.) The Eleventh Circuit has previously ruled "that a freely bleeding cut that created a pool of blood on the ground and required stiches presented a serious medical need." Hinson, 927 F.3d at 1122 (citation omitted).

Here, however, Plaintiff's description of his injury is at odds with the unverified medical records submitted at the deposition, as well as his other deposition testimony, (Pl.'s Dep. 59-60, 63-64), confirming a CT scan performed at AUMC on Plaintiff's neck identified no definitive injury and showed "[n]o acute fracture or trauma-related malalignment involving the thoracic segments," or any evidence of esophageal perforation. (Doc. no. 42-2, pp. 76, 79, 81.) Moreover, an examination of the oral cavity at AUMC revealed "normal tongue, no evident trauma"; Plaintiff's palate was intact and a normal uvula was noted. (Id. at 76.) Plaintiff was in "no acute distress," and there was "no obvious signs of injury to neck." (Id. at 77.) Importantly, despite this alleged seriousness of his injury, Plaintiff refused further testing to investigate his alleged injury and walked out of the hospital. (Pl.'s Dep., pp. 28-30, 60.)

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." See Scott v. Harris, 550 U.S. 372, 380 (2007). While credibility determinations and the weighing of evidence is for the jury, Plaintiff "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Varazo v. Keiser Corp., No. 1:16-cv-4228, 2018 WL 2938871, at *2 (N.D. Ga. June 12, 2018) (citing Scott, 550 U.S. at 380). Here, there is an obvious conflict over the severity of Plaintiff's injury, or whether he was injured at all. Indeed, the video from Defendant Rabun's body worn camera does not show any use of force, let alone a use of force resulting in bloody injury. (Rabun Decl., Video.) Plaintiff himself admitted he lied about swallowing something so that he could "work the move" to avoid going to jail by getting medical treatment. (Pl.'s Dep. 45-46.) The unverified medical records reveal Plaintiff walked out of the hospital before all testing could be completed to determine what treatment was needed. Plaintiff concedes his injury healed "naturally," (Pl.'s Dep., p. 30), without any treatment after he walked out of the hospital. Thus, the record does not support the conclusion Plaintiff had an objectively serious medical need.

However, assuming for the sake of argument Plaintiff could satisfy the objective component of a deliberate indifference claim, he cannot satisfy the subjective component. That is, Plaintiff cannot show Defendant Rabun "acted with subjective recklessness as used in the criminal law" such that he was "actually, subjectively aware that his own conduct posed a substantial risk of serious harm" to Plaintiff. Wade, 106 F.4th at 1262. As discussed above,

Defendant Rabun did not have any knowledge of a risk of serious harm to Plaintiff, as his body worn camera does not show he saw any force used on, or resultant injury to, Plaintiff. Nor is there any evidence he disregarded any such risk. Moreover, Defendant Rabun could not have agreed with a "lie" told by Defendant Atterton to medical personnel at the hospital about the cause of Plaintiff's injury because Defendant Atterton was not at AUMC on April 13, 2023. (Atterton Decl. ¶ 8.)

As to the response to Plaintiff's injury, the record conclusively establishes Plaintiff did go to AUMC on April 13, 2023, prior to any booking into the jail. To the extent Plaintiff may be alleging Defendant Rabun caused a delay in treatment by not calling for medical personnel on the scene at Russell Street, he has failed to place any "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill, 40 F.3d at 1188. To the contrary, Plaintiff's deposition testimony and unverified medical records show Plaintiff refused treatment, walked away from the hospital, and never received any follow up treatment because his injury healed on its own, "naturally." (Pl.'s Dep., pp. 30, 66-67.)

Plaintiff has not provided any evidence that Defendant Rabun's conduct injured Plaintiff. Stated otherwise, Plaintiff's claim fails because he does not offer any evidence he was injured by Defendant Rabun's acts or omissions with respect to any delay in receiving medical treatment following the alleged use of excessive force. See Hinson, 927 F.3d at 1123 (concluding plaintiff did not establish causation for his medical deliberate indifference claim because plaintiff did not "present any medical evidence suggesting a link between the delay of treatment for any injuries he experienced during his arrest, on the one hand, and his ear-related problems, on the other"); Cannon v. Corizon Med. Servs., 795 F. App'x 692, 698 (11th Cir. 2019) (*per curiam*). Ultimately, Plaintiff provides no medical evidence to establish his

condition deteriorated as a result of any delay in going to AUMC, as he must do to establish a dispute of material fact. See Hill, 40 F.3d at 1188; see also Grissom v. Corizon, LLC, No. 2:19-CV-420, 2022 WL 4290748, at *11 (M.D. Ala. Sept. 16, 2022) (explaining defendant entitled to summary judgment because plaintiff "failed to present medical documentation, expert medical testimony, or other objective medical evidence establishing delay in sending her to the hospital caused or exacerbated medical condition, as opposed to some other reason).

Accordingly, based on the undisputed facts, Plaintiff cannot show Defendant Rabun violated a constitutional right and, thus, Plaintiff has failed to meet his burden to show Defendant Rabun in not entitled to qualified immunity on the deliberate indifference claim. See Hinson, 927 F.3d at 1123 (explaining that because record failed to support conclusion plaintiff "suffered a violation of Eighth Amendment right to be free from deliberate indifference to a medical need," defendant officers entitled to qualified immunity).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion for summary judgment be **GRANTED**, (doc. no. 42), a final judgment be **ENTERED** in favor of Defendants, and this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 5th day of August, 2026, at Augusta, Georgia.

Brian K. Epps

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA